934 So.2d 191 (2006)
Jacqueline JACKSON
v.
SYSCO FOOD SERVICES.
No. 2005-CA-1304.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 2006.
*192 Catherine J. Drake, Law Office of Alexandra Mora, APLC, New Orleans, LA, for Plaintiff/Appellee.
Tobin J. Eason, Weiss & Eason, LLP, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS SR., Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
This appeal by defendant/appellant Sysco Food Services is from a judgment awarding the plaintiff/appellee Jacqueline Jackson temporary total disability benefits pending resolution of a psychiatric condition. After reviewing the record in light of *193 the applicable law and arguments of the parties, we reverse the judgment of the workers' compensation judge.

Applicable Law
La.Rev.Stat. 23:1031(A) provides compensation if an employee sustains personal injury as the result of an accident arising out of and in the course of employment. Daspit v. Southern Eagle Sales & Services, Inc., 98-1685, p. 3 (La.App. 4 Cir. 1/20/99), 726 So.2d 1079, 1081. Temporary total disability benefits are recoverable only after the employee proves, by clear and convincing evidence, that he is physically unable to perform any type of employment. La.Rev.Stat. 23:1221(1)(c)[1] In determining whether the claimant has met this burden, the workers' compensation judge must weigh both medical and lay evidence. Bailey v. Smelser Oil Gas, Inc., 620 So.2d 277 (La.1993). Furthermore, the claimant must introduce objective medical evidence to sustain this requirement by clear and convincing evidence. Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449.
Where a mental injury or illness develops secondary to a physical injury sustained in a work-related accident, the employee is entitled to compensation benefits for any disability resulting from the mental injury and to reimbursement for the mental treatment medical expenses. Charles v. South Central Industries, 96-0883 (La.11/25/96), 683 So.2d 706; Traweek v. City of West Monroe, 30,571 (La.App.2d Cir.5/13/98), 713 So.2d 655, writ denied, 98-1936 (La.11/6/98), 727 So.2d 449. Because of the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned, reviewing courts must analyze claimed mental disability with the utmost caution. Traweek, *194 supra. Thus, in order to obtain compensation benefits for a mental injury caused by a physical injury, (1) the claimant must prove by clear and convincing evidence that the physical injury caused the mental injury, (2) the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and (3) the diagnosis must meet the American Psychiatric Associations' diagnostic and Statistical Manual of Mental Disorders. La.Rev.Stat. 23:1021(7)(d), Traweek, supra; see also Harvey v. Bogalusa Concrete, Inc., 97-2745, p. 3 (La. App.1 Cir. 9/25/98), 719 So.2d 1130, 1131 (the workers' compensation claimant must prove by a preponderance of the evidence that an employment accident had a causal relationship to the disability; if the testimony leaves the probabilities evenly balanced, the claimant has failed to carry the burden of persuasion).

Discussion
The following relevant evidence was adduced at the hearing before the workers' compensation judge. On May 1, 2002, the plaintiff (employed by the defendant since March 4, 2001, as a dry dock night loader) suffered a soft-tissue injury while loading a truck when she fell from the back of the truck into the parking lot. The plaintiff left work and did not seek medical treatment until May 7, 2002, when she was examined by Dr. Thomas Hawley and released to return to light-duty work.[2] The plaintiff returned to work on June 6, 2002, and was assigned modified duties within the light-duty work restrictions but left work complaining that she was unable to work because of significant pain.
Subsequently, on June 14, 2002, Dr. Robert Steiner, an orthopedist, examined the plaintiff and, diagnosing a cervical and lumbar strain, prescribed a short course of physical therapy. Because the plaintiff continued to complain of pain after completing the prescribed physical therapy, an MRI was ordered. However, the MRI revealed only a normal lumbar spine with age-appropriate cervical spinal degeneration. Accordingly, Dr. Steiner released the plaintiff to return to light-duty work status on July 15, 2002[3], and, on October 16, 2002, released her to return to work with no restrictions.
On September 9, 2002, the plaintiff sought treatment from an orthopedist of her own choosing, Dr. Robert Ruel. Dr. Ruel recorded the plaintiff's complaints pain in her back and lower extremities, as well as numb, tingly, and cramped fingers but could find no objective sign of injury. Based on the plaintiff's pre-existing cervical degeneration, however, Dr. Ruel opined that she should avoid medium-duty jobs and limit her job activities to sedentary and light-duty positions with restrictions on bending, climbing, and prolonged walking/sitting. The plaintiff returned to Dr. Ruel with subjective complaints of pain, but Dr. Ruel remained unable to discover any objective basis for her complaints and, on January 23, 2003, observed that she had reached maximum medical improvement from her orthopedic injuries.
On January 16, 2003, the plaintiff underwent an Independent Medical Examination (IME) performed by another orthopedist, Dr. Monroe Laborde. Dr. Laborde found no physical impairment relating to the plaintiffs accident and that she was capable of returning to work without restriction. He noted, however, that although her examination was inconsistent with her *195 complaints, she was depressed and a psychological examination should be considered.
Accordingly, on September 9, 2004, a psychiatrist, Dr. Mordecai Potash, examined the plaintiff. Dr. Potash found no physical basis for the plaintiff's complaints of pain but, based solely on the history recounted by the plaintiff (who indicated that her employer required her to return immediately to full-duty work and omitted any reference to prior medical treatment, physical therapy, or her employers' attempt to assign her to light-duty status within her medically required work restrictions), opined that she should have been given an regimen of physical therapy after the accident and should not have been thrust back into her prior heavy lifting occupation which likely aggravated her condition. Dr. Potash, noting the plaintiff's past history of attempted suicide and current symptoms of depression related to her pain, unemployment, and poverty, recommended pain management counseling with prescribed medication to treat the plaintiff's depression. According to Dr. Potash's assessment, the plaintiff suffered from a "[p]ain disorder due to medical condition, exacerbated by depression."
A vocational rehabilitation counselor, Carla Seyler, evaluated the jobs offered to the plaintiff by the defendant after the accident and found all of them to be within her physical limitations and at the same salary she earned prior to the accident. Moreover, based on the plaintiff's education and skills, Ms. Seyler enumerated jobs available to the plaintiff beyond employment with the defendant.
The workers' compensation judge found, however, that the claimant was entitled to Temporary Total Disability Benefits:
The claimant suffered both physical and mental injuries as a result of said accident. More specifically, the claimant is still presently disabled due to psychiatric injuries, which she suffered as a result of her May 1, 2002 work-related accident. The court finds that the claimant is temporarily and totally disabled pending a resolution of her psychiatric condition.

Discussion
A careful review of the record in light of the applicable law does not support the judgment of the workers' compensation judge. Although the plaintiff was diagnosed with a mental injury (depression) by a licensed psychiatrist (Dr. Potash) as required by La.Rev.Stat. 23:1021(8)(d), it cannot be said that she established by clear and convincing evidence that her mental injury (depression) arises out of the soft-tissue injury she suffered in the course and scope of her employment or that she is unable to work. Drs. Hawley, Ruel, and Laborde released the plaintiff to return to work; the vocational counselor specifically enumerated jobs which, based on her education, work history, and skills, the plaintiff is capable of performing; and Dr. Potash opined that the plaintiff should undergo pain management counseling and be prescribed medication for her depression but did not find that the plaintiff was physically unable to perform any type of employment. Accordingly, the plaintiff failed to prove, by clear and convincing evidence that, pursuant to La.Rev.Stat. 23:1221(1)(c), she is physically unable to perform any type of employment and thus entitled to temporary total disability benefits.

Conclusion
The workers' compensation judge was clearly wrong in awarding temporary total disability benefits to the plaintiff pending *196 the resolution of her psychiatric condition. Accordingly, the judgment is reversed.
REVERSED.
NOTES
[1] La.Rev.Stat. 23:1221(1) provides, in full, as follows:

(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under R.S.23:1310.3.
[2] Light-duty work in this case was defined as avoiding lifting/pulling/pushing weights greater than 20 pounds.
[3] The plaintiff was paid workers' compensation benefits from May 15, 2002, through July 15, 2002.