PAUL A. BONIN, Judge.
11 Paula Gray appeals the judgment of the Office of Workers’ Compensation in favor of her employer, Marriott Residence Inn, which judgment denied her benefits. The OWC-judge concluded that Ms. Gray did not prove by a preponderance of the evidence that her injuries arose out of and in the course of her employment and that she had sustained an on-the-job accident.
We have reviewed the OWC-judge’s findings under the specific manifest error standard applicable to workers’ compensation matters and conclude that the judge’s factual findings are not clearly wrong and they are reasonable. Based upon that review, we affirm the judgment of the OWC denying Ms. Gray benefits and explain our decision below.
I
In this Part we set out the facts developed at the trial and the OWC-judge’s findings.
A
Ms. Gray filed a disputed claim for compensation on October 6, 2009, which alleged that she was injured in November 2008 while working at the Marriott. Ms. Gray sought wage-indemnity benefits and medical treatment. Marriott filed an 12answer which denied that an accident had *165 taken place and that Ms. Gray was entitled to any workers’ compensation benefits.
The parties appeared for trial on January 10, 2011, wherein Ms. Gray represented herself. The parties stipulated that:
1. At the time of the alleged accident, Ms. Gray was an employee of Marriott.
2. At the time of the alleged accident, Ms. Gray earned $12.50 per hour.
3. Marriott did not pay any indemnity benefits to Ms. Gray.
4. Marriott was self-insured at the time of the alleged accident.
Ms. Gray testified that on a Sunday morning in November 2008, she was getting keys and clipboards ready for the start of the day. As she walked towards the exit, Kim, a fellow employee, asked a question. Ms. Gray stated that as she turned to answer, her right pant leg was caught by a screw and held her back. Ms. Gray explained that then, as she moved forward, the screw threw her. Ms. Gray stated that as she was bracing herself with her left arm, she fell to her right side. Her shoulder hit a laundry basket. Next, as she tried to brace herself with her left arm, she went down on her right side and her left shoulder caught the basket. Ms. Gray stated that Kim phoned Matthew Bracken, her supervisor, and that Mr. Bracken and a maintenance worker came to the scene of the alleged accident. Ms. Gray stated that Mr. Bracken had the maintenance worker fix the screw. After composing herself, Ms. Gray stated that she returned to work, waiting to hear back from Mr. Bracken about her accident report. Ms. Gray testified that she worked the rest of her scheduled days that week. Ms. Gray stated that after her scheduled days off, she returned to work and was informed that she had been dismissed.
13After her dismissal, Ms. Gray stated that she left Mr. Bracken several voice-mails regarding her accident and that she also contacted the claims department. Ms. Gray stated that the claims department had no knowledge of her accident. When questioned whether she requested workers’ compensation benefits in writing, Ms. Gray stated that her accident was mentioned during the unemployment benefits hearing. Ms. Gray further stated that she sent a letter directly to Mr. Bracken. Ms. Gray, however, could not produce a copy of any such letter.
Ms. Gray submitted several documents related to her claim for unemployment benefits made after her termination by the Marriott. Ms. Gray contended that the Marriott had notice of her accident as a result of the unemployment proceedings as the accident was mentioned during the unemployment proceedings.
Ms. Gray also explained that she had been in a motor vehicle accident on October 30, 2008. At the time of the alleged work-related fall, she was receiving treatment for injuries sustained in the motor vehicle accident. Ms. Gray stated that a truck backed into her left side. Ms. Gray received injuries to her left knee, her neck, and her left shoulder. Importantly, Ms. Gray admitted that she did not mention to the doctor that she sustained more injuries as the result of the alleged work-related fall. But Ms. Gray stated that she did inform the physical therapist of the injuries she sustained as a result of the work-related fall and that the physical therapist treated her for the injuries she sustained as a result of the alleged work-related fall.
14Mr. Bracken testified that he was employed as a supervisor by Marriott and that the first report by Ms. Gray of an injury received during her employment with Marriott was on September 23, 2009. Mr. Bracken described the corporate pro *166 cedure once an injury on the premises is received. An accident report is filled out, and the corporate claims department receives notification. Once the corporate claims department is notified, that department issues a claims reference number. Mr. Bracken then identified the accident report dated September 23, 2009, that he prepared after receiving notice of Ms. Gray’s alleged accident and the claims reference number he received from the corporate claims department.
Mr. Bracken testified that Ms. Gray was suspended for failing to perform her job duties. Namely, Ms. Gray failed to insure that housekeeping keys were returned and to insure that data entered into the computer was correct. Mr. Bracken stated that the authority to terminate employees rests with the general manager. Ultimately, Ms. Gray was terminated on December 16, 2008.
To Ms. Gray’s assertion that Mr. Bracken was notified on the day of the accident, a Sunday, and had a maintenance man repair the screw she allegedly tripped over, Mr. Bracken responded that he had no knowledge of the accident until September 23, 2009. Further, Mr. Bracken testified that maintenance employees are not scheduled to be on the premises over the weekend.
B
The OWC-judge issued written reasons for her judgment. Therein, the judge noted that Ms. Gray did not call Kim, the coworker who witnessed the accident, to testify. The judge also noted that Mr. Bracken contradicted Ms. Gray’s testimony. The judge specifically found Mr. Bracken to be “very credible.” The judge also |fifound Mr. Bracken’s actions in reporting the accident on September 23, 2009, to the corporate claims department supported his version of the events and believed that had Mr. Bracken known of the alleged injury at an earlier time, he would have reported it at that time based on his actions of September 23, 2009.
The judge observed that Ms. Gray’s medical records did not corroborate her version of the alleged incident. While Ms. Gray claimed that she informed the physical therapist of the alleged work-related fall and that she received treatment on her right side for the injuries suffered from the fall, the record of the physical therapist indicates that Ms. Gray reported pain on her left side and that she received treatment on the left side of her body. Further, the records of the physical therapist do not note that Ms. Gray mentioned that she suffered a work-related injury.
Ms. Gray testified that she received medical treatment in Georgia from clinics and the emergency room, but she submitted no evidence that any treatment she received resulted from the work-related accident. The discharge report dated November 22, 2010, from the Well Star Emergency Center revealed that Ms. Gray was treated for hypertension and back pain. The paperwork submitted does not mention the cause of the back pain, and it does not relate the back pain to a work-related accident.
We now turn to the standard by which we review the OWC-judge’s findings.
II
The appropriate standard of review to be applied by the appellate court to the OWC-judge’s findings of fact is the “manifest error-clearly wrong” standard. Dean v. Southmark Const., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. Thus, lathe findings of the OWC-judge will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Alexander *167 v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706, 710. If the fact-finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the fact-finder, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 8 (La.7/1/97), 696 So.2d 551, 556, quoting Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even though the appellate court may feel that its own evaluations and inferences are more reasonable. Stobart v. State, through Dept. of Transp. & Development, 617 So.2d 880, 882 (La.1993). Deference is due to the fact-finder’s determinations regarding the credibility of witnesses “for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Unless “documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story,” we will defer to the trial judge’s credibility determination. Id. at 844-845.
The employee — in this case, Ms. Gray— bears the burden of proving “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031 A; Thibodeaux v. Sewerage & Water Bd. of New Orleans, 01—0713,7 p. 3 (La.App. 4 Cir. 3/6/02), 812 So.2d 843, 845. “Accident” is defined as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1).
“It is well-established that an allegedly injured employee’s testimony alone may be sufficient to discharge his burden of proof.” Duran v. Turner Industries Group, LLC, 11-0210, pp. 3-4 (La.App. 4 Cir. 7/20/11), 70 So.3d 1074, 1076. But two elements must be satisfied for the OWC-judge to accept the worker’s testimony by itself. Id. First, “no other evidence discredits or casts serious doubt upon the employee’s version of the incident” and, second, “the employee’s testimony is corroborated by the circumstances following the alleged incident.” Id.
Ill
Guided by our review standard, in this Part we explain why the entire record supports the OWC-judge’s reasonable findings that Ms. Gray’s injuries did not arise from an on-the-job accident.
The judge importantly and correctly noted that Ms. Gray’s testimony was not corroborated by any witness or documentary evidence. The supposed eyewitness co-worker, Kim, did not testify. The medical records lack any mention of a work-related accident. The medical records document only injuries sustained in the automobile accident. Dr. Alden’s reports dated December 10, 2008, and January 21, 2009, specifically contradict Ms. Gray’s claims when stating that “[tjhere are no new accidents or injuries to report.”
|sMs. Gray claimed that she left voice-mails for Mr. Bracken reporting the accident and that the Marriott did not provide any medical treatment. Ms. Gray claimed she did not mention the work-related accident to the doctor because he was treating her for the automobile accident. More *168 telling, however, is that Ms. Gray’s claim that she received treatment on her right side for injuries resulting from the on-the-job accident finds no documentation, me-morialization, or even corroboration from the physical therapist’s records. The physical therapist noted complaints of pain on the left side of Ms. Gray’s body, and reasonably might be viewed as contradicting Ms. Gray’s claims of treatment on her right side.
Other inconsistencies or discrepancies between Ms. Gray’s testimony and the documentary evidence, or lack of it, do not support a finding that the OWC-judge’s findings were clearly wrong. For example, Ms. Gray testified that the Marriott should have known of the alleged work-related accident due to the course of proceedings in her claim for unemployment benefits. Ms. Gray submitted a copy of the letter she sent requesting an appeal of the denial of her claim for unemployment benefits. In the letter, Ms. Gray mentioned a work-related injury. There is, however, no proof in the record that the Marriott received a copy of this letter. Also, the disputed claim for compensation filled out by Ms. Gray states that she fell on her left knee during the alleged work-related accident. During her testimony at trial, however, Ms. Gray testified that she was trying to brace herself with her left arm and she fell to the right side and at no time during the trial testified that she received injuries to her left knee during the alleged work-related accident. These discrepancies support the OWC-judge’s findings of fact.
|9The factual findings of the OWC-judge are reasonable in light of the record in its entirety. The judge had the opportunity to view the witnesses as they testified and to observe changes in tone and demeanor. Based upon our review of the record, the workers’ compensation judge was reasonable in finding Mr. Bracken credible. His story is not contradicted by documentary or other objective evidence, and it is not internally inconsistent or implausible. The testimony and evidence received, as well as the documents filed in the record, cast serious doubt upon Ms. Gray’s version of an on-the-job accident, and her version was not corroborated by circumstances following the alleged work-related accident. Thus, we find the judge’s findings of fact are not clearly wrong and are reasonable.
DECREE
Accordingly, the judgment of the Office of Workers’ Compensation in favor of the Marriott Residence Inn, dismissing the claim of Paula Gray with prejudice is affirmed. All costs are taxed to Paula Gray. See La. C.C.P. art. 2164.
AFFIRMED.